## Parker v. Philadelphia Rapid Transit Co. and (Keystone State Corporation, Appellant).

Argued May 11, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Frank R. Ambler,* for appellant.—The learned trial judge erred in entering a compulsory nonsuit in favor of the defendant Philadelphia Rapid Transit Company because (a) the plaintiff had not rested, (b) the defendant Keystone State Corporation had not had an opportunity to introduce its evidence, and (c) the testimony already adduced on behalf of the plaintiff was sufficient to take the case to the jury as to the liability of the Philadelphia Rapid Transit Company: Murphy v. Transit Co., 285 Pa. 399; Kilpatrick v. Transit Co.,

290 Pa. 288; Cohen v. Mause, 297 Pa. 454; Dunlap Printing Co. v. Ryan, 275 Pa. 556; Moraski v. Transit Co., 293 Pa. 224; Hughes v. Transportation Co., 300 Pa. 55.

*Harry Goldbacher,* for appellee, cited: Cleary v. Quaker City Cab Co., 285 Pa. 241.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1932:

Plaintiff, a passenger on a trolley car of the Philadelphia Rapid Transit Company, was injured, when a caterpillar crane belonging to the Keystone State Corporation ran into the rear of the car with such force as to knock it off the track. She brought suit against both corporations as joint tort-feasors. On the trial the judge entered a compulsory nonsuit as to the Transit Company on the ground that it was not shown to have been negligent. The jury rendered a verdict in plaintiff's favor against the Keystone Company for $5,500. It appeals.

Market Street runs east and west and is a very wide street, about seventy feet between curbs. In the center of the street is the elevated railway of the Transit Company supported on concrete pillars. Beneath the elevated structure are the two surface lines of track of the Transit Company. Thirtieth Street enters Market Street from the north, but does not cross it, dead-ending on the south side. At the time of the occurrence giving rise to this litigation, on account of work being carried on in connection with the new Pennsylvania Railroad station, the surface of the ground north of Market Street was somewhat higher than the bed of the street. To afford access a temporary incline of planks had been constructed in Thirtieth Street. It was about ten feet long, approximately of the width of the street, and thirty inches higher than the bed of Market Street at its northern extremity.

The street car was proceeding east on Market Street on the southern of the two surface tracks. Whether it

stopped or merely slowed up for a so-called safety stop at Thirtieth Street was a disputed question. The caterpillar crane came from north of Market Street and halted at the top of the wooden incline. Two men in addition to its operator accompanied it. Their purpose was to halt traffic on Market Street as the crane proceeded to enter that busy thoroughfare. They did not have red flags, merely signalling with their arms and hands. One of them proceeded in the cartway of Market Street as far as the space between the two surface tracks underneath the elevated. He testified he signalled to the oncoming east-bound car by throwing up his left hand. The motorman testified he did not see him. Apparently when the crane stopped at the top of the incline, the street car was at the west side of Thirtieth Street. The crane started down the incline and the street car proceeded on its way. The motorman said he saw the crane on the incline and saw it start. The operator of the crane did not intend to cross Market Street (indeed, he could not have done so as the south side of the street was torn up) but to turn east on Market Street north of both railway tracks. There was ample space for him to do so without going as far as the street car tracks, as the distance between the north rail of the track on which the street car was running and the south end of the incline was more than forty feet.

The crane was an unwieldy thing to operate in a public street as a boom extended in front of it for about twenty-eight feet. As the crane was moving along the incline, the right brake band broke, the operator lost control, the crane ran straight across Market Street and the front end of the boom struck the side of the trolley car, near the roof, close to the rear window and knocked the car off the track against one of the concrete pillars of the elevated railway, with resulting injury to plaintiff. There were two brakes on the crane, one on the right side and one on the left. When the operator saw that the machine was getting beyond control, he did not

apply the left-hand brake. He did not shut off the power. It was testified on behalf of appellant that if the left-hand brake was locked and the power shut off, the tractor would stop moving. A witness for plaintiff testified that if the power had been shut off, the machine would have stopped instantly. The crane had been inspected four days before the collision. It is alleged that the defect in the brake band could not have been discovered by the most rigid inspection.

The appellant complains because the nonsuit as to the Transit Company was entered before the plaintiff had rested and before it, the appellant, had an opportunity to present its evidence, and because, so it alleges, the Transit Company is the real party liable to the plaintiff under the proofs. At the time that counsel for the Transit Company moved for a nonsuit, appellant's attorney did likewise. It is a little difficult to see, in view of this, why he has standing now to complain of the time when the nonsuit was entered. Moreover, appellant at the time the nonsuit was entered as to the Transit Company made no objection. Subsequently during the course of the trial the judge allowed an exception to appellant because of the entry of the nonsuit. The nonsuit was entered when all the plaintiff's proofs on the question of negligence had been offered, but before testimony was received in her behalf as to the extent of her injuries and her damages and before appellant presented its testimony giving the version of the occurrence which made in its favor. This method of procedure followed a rule of the court below which we regard as most salutary and intended to save time in trials, and which provides that in actions of trespass for injury to person or property the plaintiff shall produce all his evidence upon the question of the defendant's liability before he calls any witness to testify solely to the extent of the injury or damages and the defendant's attorney may then move for a nonsuit. It is the better practice in actions where more than one

defendant has been sued and where any one defendant requests it to defer entry of the nonsuit until all hands have completed their testimony on the question of liability (Shapiro v. Philadelphia, 306 Pa. 216), but in this case no valid complaint can be made since the nonsuit was properly entered for the reason given by the learned trial judge. In his opinion disposing of the motion for a new trial, he says, summing up the proofs: "The defendant's crane, equipped with caterpillar moving gear, standing on or just beginning to move from the crest of the slightly sloping ramp in 30th Street, just north of the Market Street curb line, offered no apparent danger. The operator of the crane was not intending to cross either of the car tracks, but to place the crane on the north side of Market Street, along the curb, a short distance east of 30th Street. The proximate cause of the injury to the plaintiff, a passenger in the trolley car, was that because of a defective brake the crane became unmanageable, ran south across Market Street, and its boom struck the trolley car." With this we agree, adding the thought that if the operator of the crane had not lost control of it, the collision would not have taken place, and the further statement that the principal contention of appellant as to the liability of the Transit Company is based upon the allegation that the motorman's negligence was in not obeying the signal of the employee of defendant, who ran out to the space between the two tracks and threw up his hand. The motorman did not see him, which is not remarkable when the surroundings are taken into account, Market Street, a busy thoroughfare, an elevated railway under which the signaller stood, Thirtieth Street, carrying travel into the Pennsylvania Railroad station, and the necessary confusion and commotion in such a location. A red flag would have been a certainly seen and unmistakable signal to stop, but a man throwing up his arm in such surroundings might not and did not attract the motorman's attention at all. Under these facts, it could not

be said that the cause of the collision was the motorman's failure to observe and heed the arm of the signaller, who, to avoid being struck by the crane himself, had to run quickly from where he stopped.

The assignments of error are overruled and the judgment is affirmed.